**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

KATRENA YVETTE CONEY,

                Plaintiff,

vs.                                      Case No. 3:15-cv-479-J-34JRK

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.

_____/

## <u>REPORT AND RECOMMENDATION</u>[1]

### I. Status

      Katrena Yvette Coney ("Plaintiff") is appealing the Commissioner of the Social

Security Administration's final decision denying her claims for disability insurance benefits

("DIB") and supplemental security income ("SSI").  Plaintiff's alleged inability to work is a

result of "Hiv/aids"; "Peripheral neuropathy"; "Migraines"; and "H[igh ]B[lood ]P[ressure.]"

Transcript of Administrative Proceedings (Doc. No. 12; "Tr." or "administrative transcript"),

filed June 26, 2015, at 113, 120, 130, 142, 150, 154.  On November 14, 2011, Plaintiff filed

an application for DIB, and on January 17, 2012, Plaintiff filed an application for SSI, alleging

in both an onset disability date of July 7, 2009.  Tr. at 246-47 (DIB), 248-53 (SSI).  Plaintiff's

applications were denied initially, <u>see</u> Tr. at 120-129, 140, 168-72, 179 (DIB), 130-39, 141,

---

[1]      "Within 14 days after being served with a copy of [a report and recommendation on a dispositive issue], a party may serve and file specific written objections to the proposed findings and recommendations."  Fed. R. Civ. P. 72(b)(2).  "A party may respond to another party's objections within 14 days after being served with a copy."  <u>Id.</u>  A party's failure to serve and file specific objections to the proposed findings and recommendations alters the scope of review by the District Judge and the United States Court of Appeals for the Eleventh Circuit, including waiver of the right to challenge anything to which no specific objection was made.  <u>See</u> Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); 11th Cir. R. 3-1; Local Rule 6.02.

173-78, 180 (SSI), and were denied upon reconsideration, <u>see</u> Tr. at 142-52, 167, 187-91, 197 (DIB), 154-64, 166, 192-96, 198 (SSI).

On September 13, 2013, an Administrative Law Judge ("ALJ") held a hearing, during which Plaintiff, who was represented by counsel, and a vocational expert ("VE") testified. Tr. at 53-94.  Following the hearing, the ALJ issued a Decision on December 24, 2013, finding Plaintiff not disabled through the date of the Decision.  Tr. at 32-44.

Plaintiff then submitted additional evidence to the Appeals Council in the form of a brief authored by her attorney representative,[2] Tr. at 5-6, 353-55, and requested that the Appeals Council review the ALJ's Decision, Tr. at 23, 28 (duplicate).  On March 4, 2015, the Appeals Council denied Plaintiff's request for review, Tr. at 1-4, thereby making the ALJ's Decision the final decision of the Commissioner.   On April 16, 2015, Plaintiff, through counsel,[3] commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff advances one argument on appeal: "The [ALJ] failed to apply the correct legal standards to [Plaintiff's] upper extremity neuropathy limitations at steps four and five of the sequential evaluation process."  Plaintiff's Brief (Doc. No. 14; "Pl.'s Br."), filed August 31, 2015, at 2; <u>see also</u> <u>id.</u> at 9-13.  On October 7, 2015, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 15; "Def.'s Mem.") responding to Plaintiff's arguments.  After a thorough review of the entire record and consideration of the

---

[2]     Plaintiff obtained a different attorney after the ALJ's Decision was rendered.  Tr. at 25-27.

[3]     Plaintiff substituted a third attorney for the current appeal.  <u>See</u> Compl. (Doc. No. 1) at 3.

parties' respective filings, the undersigned recommends that the Commissioner's final decision be reversed and remanded for further proceedings for the reasons stated in this Report and Recommendation.

## II.  The ALJ's Decision

When determining whether an individual is disabled,[4] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry.  See Tr. at 34-43.  At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since July 7, 2009, the alleged onset date."  Tr. at 34 (emphasis and citation omitted).  At step two, the ALJ found that "[Plaintiff] has the following severe impairments: human immunodeficiency virus (HIV) infection, neuropathic arthropathy, major depressive disorder, hypertension, anxiety, and neuropathy."  Tr. at 34 (emphasis and citation omitted).  At step three, the ALJ

---

[4]     "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

ascertained that "[Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 35 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform light work as defined in 20 CFR [§§] 404.1567(b) and 416.967(b) except she requires the ability to alternate between sitting and standing at will. She can occasionally climb ladders, ropes, scaffolds, ramps, or stairs. She can occasionally crawl and frequently balance, stoop, kneel, or crouch. [Plaintiff] must avoid concentrated exposure to extreme cold or heat, the use of moving machinery, and unprotected heights. She is limited to simple, routine and repetitive work tasks performed in a work environment free of fast-paced production requirements involving only simple work-related decisions and routine workplace changes. She can have only occasional interaction with the public and co-workers.

Tr. at 36 (emphasis omitted). At step four, the ALJ found that "[Plaintiff] is unable to perform any past relevant work" as a "home attendant," a "shipping and receiving clerk," a "pharmacy technician," and a "garment sorter." Tr. at 42 (some emphasis and citations omitted). At step five, after considering Plaintiff's age ("36 years old . . . on the alleged disability onset date"), education ("at least a high school education"), work experience, and RFC, the ALJ found "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," Tr. at 42-43 (emphasis and citations omitted), including "collator/operator," "addresser," and "silver wrapper[.]" Tr. at 43. The ALJ concluded that Plaintiff "has not been under a disability . . . from July 7, 2009, through the date of th[e D]ecision." Tr. at 43 (emphasis and citation omitted).

### III.  Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)).  "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence."  Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

### IV.  Discussion

As summarized above, Plaintiff challenges the ALJ's handling of Plaintiff's "upper extremity neuropathy at steps four and five of the sequential evaluation process."  Pl.'s Br. at 9.  Specifically, Plaintiff contends that although the ALJ found Plaintiff's neuropathy and

peripheral neuropathy to be severe impairments at step two, the ALJ failed to account for any upper extremity limitations in the RFC and in the hypothetical to the VE. Id. at 10-11. Defendant, on the other hand, contends that Plaintiff's main neuropathy is in her lower, rather than upper, extremities. Def.'s Mem. at 6. According to Defendant, the ALJ sufficiently accounted for lower extremity issues resulting from her neuropathy (a point that Plaintiff does not dispute), and the ALJ did not err in formulating the RFC and posing the hypothetical to the VE that included the RFC. Id. at 6-10. Because the VE testified that Plaintiff could perform a number of jobs, says Defendant, the ALJ did not err at step five in finding there are jobs available in the national economy that Plaintiff can perform. See id. at 2-3, 6-10.

Although Plaintiff's argument implicates steps four and five of the sequential evaluation process, to place Plaintiff's argument in context, an initial discussion of the law at step two is appropriate. This is the step in which an ALJ determines whether a claimant suffers from a severe impairment. See 20 C.F.R. § 404.1520(a)(4)(ii). At this step, "[a]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work." Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984). "[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). A claimant has the burden of proving that impairments are severe. See Bowen, 482 U.S. at

146 n.5 (recognizing the claimant's burden of proof at step two to show "a medically severe impairment or combination of impairments").

"The finding of any severe impairment, based on either a single impairment or a combination of impairments, is enough to satisfy step two because once the ALJ proceeds beyond step two, he is required to consider the claimant's entire medical condition, including impairments the ALJ determined were not severe." Burgin v. Comm'r of Soc. Sec., 420 F. App'x 901, 902 (11th Cir. 2011) (unpublished). To be sure, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe." Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 825 (11th Cir. 2010) (unpublished) (emphasis added). When an ALJ identifies one or more impairments at step two, any error in omitting a particular severe impairment at step two is harmless if "the ALJ considered all of [the] impairments in combination at later steps in the evaluation process." Burgin, 420 F. App'x at 903 (citation omitted); see Heatly, 382 F. App'x at 825.

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1). It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1545(a)(5). In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider

a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; <u>Reeves v. Heckler</u>, 734 F.2d 519, 525 (11th Cir. 1984)).

An ALJ poses a hypothetical question to a VE as part of his step-five determination of whether the claimant can obtain work in the national economy. <u>See</u> <u>Wilson v. Barnhart</u>, 284 F.3d 1219, 1227 (11th Cir. 2002) (citation omitted). When the ALJ relies on the testimony of a VE, "the key inquiry shifts" from the RFC assessment in the ALJ's written decision to the adequacy of the RFC description contained in the hypothetical posed to the VE. <u>Corbitt v. Astrue</u>, No. 3:07-cv-518-J-HTS, 2008 WL 1776574, at *3 (M.D. Fla. Apr. 17, 2008) (unpublished) (citation omitted). "[F]or a [VE]'s testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." <u>Wilson</u>, 284 F.3d at 1227 (citation omitted).

Here, the ALJ in the Decision found a number of severe impairments at step two, including "neuropathic arthropathy" and "neuropathy." Tr. at 34 (emphasis and citations omitted). The ALJ also recognized Plaintiff's testimony regarding the neuropathy effects on her upper extremities:

> She said her hands become numb and tingly while she is working. . . . She described the pain in her hand as a 6 to 7 out of 10 with medication and a 9 out of 10 without medication on a 10 point pain scale. . . . She said she can use her hands for 20 minutes at a time, and that she has had tingling in her feet, legs, upper thighs and hands for the past 4 to 5 years. She said it has gotten better and she is able to do more.

Tr. at 37 (referring to Plaintiff's testimony during the hearing). Proceeding through the remaining steps, the ALJ discussed the problems that result from Plaintiff's impairments. Tr. at 36-42. The discussion of the medical evidence in the Decision focuses almost entirely on the lower extremities, Tr. at 36-42, and there are no upper extremity limitations set forth in

the RFC, Tr. at 36.  By contrast, there are lower extremity limitations in the RFC, Tr. at 36, and the ALJ explains the reasoning for those assigned limitations, Tr. at 38, 42.

During the hearing, the ALJ presented the hypothetical to the VE that incorporates the RFC in the written Decision.  Tr. at 83-85.  The VE responded that Plaintiff would be able to perform the jobs of collator operator, addresser, and silver wrapper.  Tr. at 84-85.  Relying on that testimony, the ALJ found in the written Decision that Plaintiff is capable of performing those jobs.  Tr. at 43.  For the following reasons, the undersigned finds that the ALJ's unexplained election to exclude upper extremity limitations from the RFC is not supported by substantial evidence.

Although Plaintiff's main complaints of pain and weakness to her treating doctors centered around her lower extremities, Plaintiff also complained fairly regularly of upper extremity pain and issues.  First, at least one of the notes from "Family Care Partners - Arlington," dated November 23, 2010, contains complaints of upper extremity problems resulting from Plaintiff's neuropathy.[5]  See Tr. at 387-88 (note documenting "neuropathy to b/l LE's[[6]]" and now noting 'burning sensation' to arms," as well as "decreased sensation to b/l legs and to arms, but has sensation of 'burning'") (purportedly quoting Plaintiff).

Second, the notes from "UF Infectious Disease CPN" discuss the overall symptoms of Plaintiff's polyneuropathy and peripheral neuropathy.[7]  These notes do not directly discuss

---

[5]     The notes from this family care practice are dated between August 2010 and July 2011. See Tr. at 387-404, 493-516.

[6]     These abbreviations are believed to stand for "bilateral lower extremities."

[7]     The notes from the UF Infectious Disease CPN are dated between December 13, 2010 and August 7, 2013. See Tr. at 631-736, 425-36, 564-624.

upper extremity problems, but they often state that Plaintiff's symptoms are "more significant" in the lower extremities, from which it can be inferred that there are symptoms in the other extremities as well.  See Tr. at 647-48 (January 31, 2011 note stating that Plaintiff "[c]ontinues with Neuropathy symptoms, more significant in lower extremities" and "[f]ell recently had minor fracture to right wrist"); Tr. at 651 (February 16, 2011 note stating that Plaintiff "[c]ontinues with Neuropathy symptoms, more significant in lower extremities"); Tr. at 655 (April 18, 2011 note stating same); Tr. at 660, 433 (duplicate) (June 1, 2011 note stating Plaintiff complained of "significant neuropathy symptoms, more significant in lower extremities").

Third, the notes from "UF Family Medicine Center at Lem Turner CPN" contain some complaints of mild upper extremity issues.[8]  See Tr. at 464-65 (October 6, 2011 note containing diagnosis of "Peripheral neuropathy" with "pain which is usually in legs bilat/ sometimes in arms/ usually tingling along with pain" and "occas weakness" but indicating she "ext good strength bilat/ upper/ and lower"); Tr. at 461-62, 474-75 (duplicate) (October 27, 2011 note containing diagnosis of "moderate-large peripheral neuropathy which is inadequately controlled" and discussing Plaintiff's complaints of "numbness and tingling in le bilat but now legs feeling weak and giving out on her sometimes" as well as "mild swelling in hands and feet at night"); Tr. at 454-55, 479-80 (duplicate) (January 9, 2012 note containing diagnosis of "AIDS polyneuropathy" and "Moderate-large peripheral neuropathy" with "sx[[9]] in arms/ hands/ legs also" but stating that Plaintiff "ext good strength/ upper/ lower ext bilat").

---

[8]     The notes from the UF Family Medical Center are dated between August 8, 2011 and January 9, 2012.  See Tr. at 454-69, 474-80.

[9]     This abbreviation is believed to stand for "symptoms."

Fourth, the notes from William I. Schwartz, D.O. contain a number of complaints of upper extremity pain in addition to the lower extremity pain.[10] See Tr. at 533-34 (May 15, 2012 note documenting a new patient relationship for primary care and diagnoses of "Neuropathic arthropathy" and "Neuropathy in other Dis[[11]]") (some capitalization omitted); Tr. at 535-37 (June 13, 2012 note containing same diagnoses as well as "Mononeuritis" and "[p]ain primarily in upper and lower extremities"); Tr. at 538-40 (July 12, 2012 note containing same diagnoses and "[p]ain primarily in upper and lower extremities"); Tr. at 541-42 (August 13, 2012 note containing diagnosis of "Neuropathic arthropathy"; "[p]ain primarily in upper and lower extremities"; "[c]hronic pain lower extremity not responsive to Duragesic patch"; "[c]hronic pain both arms not responsive to Duragesic patch"; and a referral for pain management); Tr. at 543-44 (September 10, 2012 note containing same diagnoses as well as "Mononeuritis" and same pain problems; stating that Plaintiff "has an appointment with pain management at Shands in November"[12]); Tr. at 545-46 (October 5, 2012 note containing diagnosis of "Neuropathic arthropathy" and same pain problems); Tr. at 547-48 (November 8, 2012 note containing same diagnosis as well as "Mononeuritis NOS" and same pain problems and indicating that the Shands pain management doctor recommended

---

[10]  The notes from Dr. Schwartz are dated between May 15, 2012 and July 16, 2013. See Tr. at 533-63.

[11]  This abbreviation is believed to stand for "Diseases."

[12]  Plaintiff also complained of upper extremity pain and weakness during her two visits in 2012 with "Shands Jacksonville Pain Management CPN." See Tr. at 530-32 (March 15, 2012 note containing diagnoses of "Moderate-large peripheral neuropathy" and "AIDS polyneuropathy" and stating Plaintiff has "generalized pain in her bilateral arms, legs, and face"); Tr. at 528-29 (November 6, 2012 note containing same diagnoses and stating Plaintiff has "sharp stabbing pain in her bilateral upper and lower extremities that is sharp and stabbing with associated numbness and tingling").

"Methadone 5 mg t.i.d.[13] . . . for breakthrough pain"); Tr. at 549-50 (December 5, 2012 note containing diagnosis of "Neuropathic arthropathy" with same chronic pain in upper and lower extremities but "some relief" (8/10 pain level) after taking methadone); Tr. at 551-52 (January 3, 2013 note containing same diagnosis with same chronic pain in upper and lower extremities and "some relief" (8/10 pain level) with methadone); Tr. at 553-54 (February 7, 2013 note containing diagnoses of "Neuropathic arthropathy," and "Neuropathy In Other DIS" with same chronic pain in upper and lower extremities and "some relief" (8/10 pain level) with methadone) (some capitalization omitted); Tr. at 556-57 (March 4, 2013 note containing diagnosis of "Neuropathic arthropathy" and same chronic pain in upper and lower extremities being managed by oxycodone and methadone); Tr. at 558-59 (April 2, 2013 note containing same diagnosis and same chronic pain in upper and lower extremities but noting that Plaintiff "appears to be doing well" on her pain management regimen); Tr. at 560-61 (May 13, 2013 note containing same diagnosis and "Mononeuritis NOS" with "[p]ain primarily in upper and lower extremities" and noting Plaintiff "appears to be doing well" on her pain management regimen"); Tr. at 562-63 (July 16, 2013 note containing diagnosis of "Neuropathic arthropathy" with "[p]ain primarily in upper and lower extremities" and noting Plaintiff "appears to be doing well" on her pain management regimen").

        In addition to the medical evidence, Plaintiff testified during the hearing about her upper extremity pain and other issues.  Tr. at 75-78.  She testified specifically about the effects on her ability to perform work-related functions for her part-time job at CVS:

---

        13        This abbreviation is believed to stand for "ter in die," which is Latin for "three times a day."

Case 3:15-cv-00479-MMH-JRK   Document 16   Filed 06/03/16   Page 13 of 14 PageID 815

Q      Okay.  What about using your hands? Do you have any difficulties?
A      Yes, sir.  On a daily basis at work, I have to use my hands - - like, tightening a prescription - - tightening the prescriptions up, and then opening the medication.  And my hands get numb - - well, my fingers get numb and tingly, where it makes it difficult for me to open the medication.
Q      Okay.  Do you think you could work any more than you do now, hour-wise, doing that job?
A      No, sir.  I've tried, and I was unable to keep up, and I was let go.

Tr. at 75.

Given the medical evidence containing fairly regular complaints of upper extremity pain and other issues, combined with Plaintiff's testimony regarding the upper extremity issues and their effect on her ability to perform job-related functions, the ALJ's unexplained election to exclude upper extremity limitations from the RFC is not supported by substantial evidence.[14]

## V.  Conclusion

Upon due consideration, it is

**RECOMMENDED THAT**:

---

        [14]      The undersigned notes that during the hearing, Plaintiff's counsel clarified that all of the jobs identified by the VE "require at least frequent handling . . . and fingering," and the VE agreed.  Tr. at 87.  The VE also testified that someone with limitations of <u>occasional</u> handling and fingering would not be able to perform these jobs.  Tr. at 87.  But, the ALJ then presented the following additional hypothetical to the VE:

        If we had a limitation, then, of the hypothetical person would be limited to <u>frequent</u> handling of objects, defined as gross manipulation, and <u>frequent</u> fingering of objects, defined as fine manipulation, would all of the jobs that you provided . . . still be available?

Tr. at 87 (emphasis added).  The VE responded, "Yes." Tr. at 87. Nevertheless, the ALJ did not discuss or include any sort of upper extremity limitations in the RFC in the written Decision.

-13-

1.    The Clerk of Court be directed to enter judgment pursuant to 42 U.S.C. § 1383(c)(3) and sentence four of § 405(g) **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

>    (a)    Reevaluate evidence of Plaintiff's upper extremity limitations; and
>
>    (b)    Take such other action as may be necessary to resolve these claims properly.

2.    The Clerk be further directed to close the file.

3.    Plaintiff's counsel be advised that, in the event benefits are awarded on remand, any § 406(b) or § 1383(d)(2) fee application shall be filed within the parameters set forth by the Order entered in Case No. 6:12-mc-124-Orl-22 (In Re: Procedures for Applying for Attorney's Fees Under 42 U.S.C. §§ 406(b) and 1383(d)(2)).

**RESPECTFULLY RECOMMENDED** at Jacksonville, Florida on June 3, 2016.

*James R. Klindt*
**JAMES R. KLINDT**
United States Magistrate Judge

kaw
Copies to:

Hon. Marcia Morales Howard
United States District Judge

Counsel of record

-14-